### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELLY ISAAC, ALEXANDER ZAMUDIO and STEVE OBERLY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLENDTEC, INC.,<br><br>Defendant. | Case No. 1:22-cv-11254<br><br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiffs Shelly Isaac, Alexander Zamudio, and Steve Oberly ("Plaintiffs"), bring this action against Defendant Blendtec, Inc. ("Defendant" or "Blendtec"), on behalf of themselves and all others similarly situated, and complain and allege upon personal knowledge and on information and belief derived from, among other things, investigation of their counsel and facts that are a matter of public record.

### NATURE OF THE ACTION

1.      Blendtec manufactures and sells a line of "powerfully innovative"[1] residential use blenders (the "Blenders"), which are designed to be used by both professional and home chefs for blending and processing food. These high-end kitchen appliances range in retail price from $380 to nearly $1100.

---

[1] https://www.blendtec.com/pages/about (Last Accessed August 3, 2022).

2.     The Blender's system includes a motorized base and a jar that can be replaced or interchanged with seven different Blendtec jars: Wildside Flow Jar, Wildside+ Jar, FourSide Jar, Mini WildSide Jar, Blendtec GO™, Margarita Jar, and Twister Jars[2] (collectively "Blendtec Jars" or "Jars").

3.     The Blender base is unable to operate without a Blendtec Jars, which are included with the original Blender purchase. The Jars are also independently priced for purchase between $119.95 to $149.95.

4.     The Blenders and Jars are sold through Blendtec's website, as well as several authorized retailers such as Home Depot, Williams-Sonoma, Bed Bath & Beyond, and QVC.

5.     The Jars are designed and manufactured in a substantially similar, if not identical, way, and utilize an identical blade assembly, which incorporates the same shaft seals, ball bearings, lubricants, and other components to connect the blade to the Jar (the "Blade Assembly").

6.     Blendtec claims its Blenders contain technology which makes blending "simpler and more effective."[3] However, despite being marketed as "The World's Most Advanced Blender,"[4] the Jars all contain a uniform design and/or manufacturing defect in the Blade Assembly of the jars which causes leakage, blade malfunction, and ultimately total product failure.

7.     Specifically, the inadequate and incompatible materials used in the Jar's Blade Assembly, as more fully described below in the "Defect" section, lead to friction and accelerated deterioration of the bearings, seals, and rubber ("Blade Assembly Defect" or "Defect"). The Defect results in leakage, smoking, vibrating, and/or loud grinding sounds while in use.

---

[2] https://www.blendtec.com/collections/jars (Last Accessed August 3, 2022).
[3] https://www.blendtec.com/pages/about (Last Accessed August 3, 2022).
[4] *Id.*

8.     The ultimate result of the Defect is premature total failure of the Jar's Blade Assembly, rendering the Blender useless.

9.     As the Defect degrades the Blade Assembly, small pieces of rubber, silicone, and/or plastic contained within the Blade Assembly's components may also migrate to the Jar. This is a safety hazard to purchasers, who are at risk of unknowingly ingesting the deteriorated rubber, silicone, and/or plastic through food and beverages.

10.     Each of the Jars suffer from the uniform Defect, which, unknown to consumers but known to Blendtec, exists at the point of purchase.

11.     The Blenders are significantly more expensive than competing residential blenders. Given the price point of the Products and the Products representations, Plaintiffs and Class Members expected them to last at least 10-years.

12.     As the Blender base cannot operate without a Blendtec Jar, the Blenders are rendered completely unusable by the Blade Assembly Defect in the Jar.

13.     Blendtec has long known about the Defect, but has failed to disclose the Defect to consumers, instead waiting for consumers to complain that the Blenders leak, degrade, or otherwise fail to operate as a reasonable consumer would expect.

14.     When consumers do complain about the Defect, Blendtec replaces the Jar with an equally defective Jar.

15.     Plaintiffs and Class Members who have experienced the Defect have repeatedly put Blendtec on notice of the Defect, but Blendtec has nevertheless continued to sell its defective Blenders to consumers.

16.     In fact, Blendtec has been aware of the Defect for at least seven years, if not more, from various warranty claims and complaints made by consumers.

17.     In fact, seven years ago, on its own website and in response to a complaint of leakage, Blendtec "Marketing" responded to the complaint by stating it was aware of the leaking, and that "the leaking issue stems from the jar and not the blender itself."[5]

18.     Thus, Blendtec knew or should have known that the Blenders have a defectively designed and/or manufactured Blade Assembly that leads to failure of the Jars and renders the Blender useless, and that Jars are therefore unfit for there intended purpose of safely and reliable blending food and beverages. Nevertheless, Blendtec failed to disclose this Defect to Plaintiffs and Class Members at the time of purchase or thereafter and continued to manufacture the Jars in the same defective manner.

19.     The existence of the Blade Assembly Defect is a material fact that reasonable consumers, including Plaintiffs and Class Members, would have considered when deciding whether to purchase the Blendtec Blenders and Jars. Had Plaintiffs and Class Members known about the Defect at the time of purchase, Plaintiffs and Class Members would not have purchased the Blenders or Jars or would have paid less for them.

## PARTIES

20.     Plaintiff Shelly Isaac is a resident of Hyde Park, Massachusetts who purchased a Blendtec Blender for her personal use.

21.     Plaintiff Alexander Zamudio is a resident of Chula Vista, California who purchased a Blendtec Blender for his personal use.

22.     Plaintiff Steve Oberly is a resident of Port Angeles, Washington who purchased a Blendtec Blender for his personal use.

---

[5] https://www.blendtec.com/collections/classic-blenders/products/classic-575 (Last Accessed August 4, 2022)

23.     Defendant Blendtec, Inc. is a Utah corporation with its principal place of business at 1206 South 1680 West, Orem, Utah.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named and unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different States.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

25.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

26.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

*Blendtec's Business*

27.     Blendtec is one of the most widely recognized brands in the food service and kitchen appliance industry, designing and manufacturing high-speed commercial and residential blenders which are assembled at the company's Orem, Utah facility.

28.     In 2006, founder Tom Dickson began promoting Blendtec blenders on YouTube as part of a video series entitled "Will It Blend?" The videos featured Dickson blending rakes, marbles, and other materials to demonstrate the power and durability of Blendtec blenders.

29.     The obvious purpose of the campaign was to represent that the Blendtec blenders are strong, high-quality appliances with high efficiency motors and blades that are superior to other blenders on the market.  The series is regarded as one of the most successful viral marketing campaigns of all time, and it helped to transform Blendtec into a household name virtually overnight.[6]

30.     Blendtec has continued to grow, increasing its product lines to sell a variety of Blenders and accessories for both residential and professional use. These products are sold through Blendtec's website and various other third-party retailers, including Costco, Williams-Sonoma, Home Depot, Bed Bath & Beyond, and Kohl's.

31.     Blendtec's products are uniformly marketed as high quality, "built to last," and "are *built to the highest commercial standards*, making them the most advanced blenders you can buy."[7] [Emphasis added]. Blendtec reinforces this marketing by highlighting its famous users,[8] which include Kate Middleton, Tom Brady, and celebrity chef Ree Drummond (aka the Pioneer Woman).

32.     Owing to their purported quality, Blendtec Blenders are significantly more expensive than competing residential blenders, ranging in retail price from approximately $380 for its most basic model to approximately $1100 for a "professional" model. Its Jars are independently priced comparable to that of its biggest competitor, Vitamix.[9]

---

[6] https://en.wikipedia.org/wiki/Will_It_Blend%3F (Last Accessed August 3, 2022).
[7] https://www.blendtec.com/pages/blendtec-difference?_pos=1&_sid=cecde2b29&_ss=r (Last Accessed August 3, 2022).
[8] https://www.blendtec.com/pages/famous-blendtec-users (Last Accessed August 3, 2022).
[9] https://www.vitamix.com/us/en_us/shop/accessories?catalog_product_type=106_109 (Last Accessed August 3, 2022).

33.     Blendtec offers three "series" of Blenders to residential consumers: the Classic, Designer, and Professional.[10] The various Blender models contained within these product lines utilize a motorized base, which works in conjunction with the Blendtec-branded Jars where the Blade Assembly is located.[11]

34.     When purchasing a Blendtec blender, both the base and Jar are included with purchase. However, the Jars are interchangeable and may be replaced with any of Blendtec's seven residential Blender models of Jars. As indicated above, the Blenders will not operate without an operational Blendtec Jar.

35.     The Jar "assembly consists of the blender jar, blade assembly, and lid."[12]

36.     More specifically, the Jars are designed and manufactured in a substantially similar, if not identical, way, and utilize an identical Blade Assembly, which incorporates the same shaft seals, ball bearings, lubricants, and other components to connect the blade to the Jar.  In fact, as stated by the Blendtec website, each Jar is "[c]ompatible with all Blendtec consumer blenders."[13]

37.     In an increasingly crowded market, and in order to differentiate itself from well-known competitors such as Vitamix, Blendtec specifically touts the superior performance of its Jars. For example, Blendtec claims the WildSide+ Jar provides the "fastest, smoothest blends yet," to "maximize your blending performance."[14]

---

[10] https://www.blendtec.com/pages/shop (Last Accessed August 3, 2022).

[11] *Id.*

[12] https://s3.amazonaws.com/blendtec.com/files/user_manuals/2016-Classic-Series-Manual.pdf (Last Accessed August 3, 2022).

[13] *See e.g.* https://www.blendtec.com/collections/jars/products/wildside-flow-jar (Last Accessed August 3, 2022).

[14] https://www.blendtec.com/collections/jars/products/wildside-jar (Last Accessed August 3, 2022).

38.     Likewise, it represents that its "Blade Assembly: Uniquely designed stainless steel blade provides fast, consistent blending."[15]

39.     Blendtec further warrants that its Blenders are built to the highest commercial standards,[16] and stand up to heavy use due to a durable metal drive socket that "never slips or needs to be replaced."[17]

40.     What Blendtec fails to disclose to consumers is the fact that its purported high commercial standards do not extend to the Blenders' Jars. Because the Jar is an indispensable part of the Blender containing the actual Blade Assembly, the uniform Defect present in the Jars renders the entire Blender worthless.

***The Defect***

41.     The Blenders are made up of a stationary motorized base and the blending Jar, which contains stainless steel blades designed to mix, crush, puree, and blend ingredients.

42.     When a consumer uses the Blender, regardless of the speed or setting selected, the mechanics are the same. The Jar connects to the base by inserting the Jar's driveshaft into the base's metal drive socket. The base's motor rotates its metal drive socket, which rotates the Jar's driveshaft and, in turn, the Jar's blades.

---

[15] https://s3.amazonaws.com/blendtec.com/files/user_manuals/2016-Classic-Series-Manual.pdf (Last Accessed August 3, 2022).
[16] https://www.blendtec.com/pages/blendtec-difference?_pos=1&_sid=cecde2b29&_ss=r (Last Accessed August 3, 2022).
[17] *Id.*



43.     The Blade Assembly utilizes a double row ball bearing between the blade and the driveshaft to reduce friction when the blades are spinning.

44.     Ball bearings are used in machines like blenders primarily to reduce friction and position moving machine parts.

---

[18] https://s3.amazonaws.com/blendtec.com/files/user_manuals/2016-Classic-Series-Manual.pdf (Last Accessed August 3, 2022).

45.     The primary construction of ball bearings includes grooved, inner and outer hardened (e.g. metal) races or tracks, and multiple hardened balls, typically steel. The balls fill the space between the two races, with the outer race being affixed to the machine, or in this case the Jars.

46.     The rotation of the ball bearings reduces surface contact and friction as compared to flat surfaces rubbing against each other.



47.     Lubrication is essential to the proper operation of ball bearings, as the lubricant reduces friction between the bearing's internal components. There are many types of lubricants, and the appropriate type and amount of lubricant depends on a variety of factors, including the speed and temperature at which the bearing is operating.

48.     Ball bearings can fail when they are not the appropriate quality, grade, or strength for a particular use, or as a result of improper and/or inadequate lubrication.

49.     The Jar utilizes two silicone seals around the ball bearing—one on the inside of the Jar and one on the outside of the Jar-- to keep the contents of the Jar from leaking into the bearing and/or the base's driveshaft.

50.     A cross-section of Blendtec's Blade Assembly created by Plaintiffs' engineering consultant is reproduced below:



51.     The Defect results from the use of wholly inadequate and incompatible materials used in the Jar's Blade Assembly.

52.     Specifically, the Jar utilizes an inadequate, weak and ineffective seal in its Blade Assembly which causes the Jar's seal to degrade, leak, and ultimately fail.

11

53.     The Jar's ball bearing and its lubricant are likewise inadequate and incompatible for use in the Blender, causing premature deterioration of the bearing.

54.     When the seal fails, liquid leaks into the ball bearing, which causes further degradation of the plastic and lubricant surrounding the bearing.

55.     The Defect manifests in a variety of ways which are easily observed by the consumer. When the seal fails, the Jar leaks its contents from the bottom of the Jar and into the base's drive socket. Once the ball bearing fails, consumers may observe the degraded pieces of the bearing and/or the seal in the Jar, in addition to smoke, loud grinding noises, vibration and eventual failure of the Blade Assembly.

56.     Upon information and belief, this Defect is a safety hazard to the consumers who have purchased the Blenders, as they are at risk of ingesting deteriorated rubber, silicone, and/or plastic through food and beverages blended in the Jars.

57.     The entire Blade Assembly, which includes the seal and bearing, is covered by a stainless steel "cap,", and thus cannot be seen, let alone repaired, without disassembling the Jar.

58.     The Defect is latent such that no reasonable customer would know or be able to discover through inspection and without expert investigation that it exists at the time the Blender is purchased. However, Blendtec knew or should have known of the Defect before it distributed the Blenders into the consumer marketplace.

59.     In fact, Blendtec has known of the Defect for seven or more years, yet despite Blendtec's knowledge of the Defect, it has not issued a recall or notified Plaintiffs or Class Members of the premature failure and potential safety hazard from ingesting rubber, silicone, and/or plastic debris.

60.     Blendtec's conduct with respect to the Blenders is also false and misleading, especially as to those representations made in Blendtec's literature and online that the Blenders are fit for the ordinary purpose for which they are sold. Such conduct includes, but is not limited to the following representations:

a.   The Blenders and Jars are suitable for blending food and beverages.

b.   "Blendtec warrants the blender motor to be free of defect in material and workmanship for the warranty period." [19]

c.   "Blendtec warrants the motor base and jar assembly, including all moving jar parts, against leaking or breakage for the warranty period."[20]

d.   The Blenders "are built to the highest commercial standards," [21]

e.   The Blenders are "the most advanced blenders you can buy."[22]

f.   The drive socket "never slips or needs to be replaced, so it stands up to heavy use year after year";[23]

g.   The Blenders contain "Durable Safety Blade"[24]

h.   The Blenders are "Stronger. Safer."[25]

i.   "Gives you a perfectly smooth blend every time."[26]

---

[19] https://s3.amazonaws.com/blendtec/files/user_manuals/2016-Classic-Series-Manual.pdf (Last Accessed August 3, 2022).
[20] *Id.*
[21] https://www.blendtec.com/pages/blendtec-difference?_pos=1&_sid=cecde2b29&_ss=r (Last Accessed August 3, 2022).
[22] *Id.*
[23] https://www.blendtec.com/pages/what-makes-blendtec-the-best (Last Accessed August 3, 2022).
[24] *Id.*
[25] *Id.*
[26] *Id.*

j.   "Blendtec blades are made of cold-forged hardened steel and are up to 80% thicker and 10 times stronger than other blender blades."[27]

k.   "No more baby-sitting your blender- create the perfect blends every time with a single touch."[28]

l.   "Instead of relying on breakable plastic parts to spin our blades, all Blendtec blenders feature a hardened metal drive socket."[29]

m.   "Up for any task."[30]

n.   "Blendtec blenders feature the industry's most powerful motors..."[31]

o.   "An Unfaltering Dedication to Innovation."[32]

p.   "Powerfully Innovative."[33]

q.   "The World's Most Advanced Blender."[34]

r.   "With technology to make blending simpler and more effective, Blendtec is the ultimate tool for helping you Feed Your Passion.™"[35]; and

s.   the WildSide+ Jar specifically combines with the Blendtec Blender to "maximize the blender performance" which produces "the fastest, smoothest blends yet."[36]

---

[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] https://www.blendtec.com/pages/about (Last Accessed August 3, 2022).
[33] *Id*.
[34] *Id*.
[35] *Id*.
[36] https://www.blendtec.com/products/wildside-jar (Last Accessed August 3, 2022).

61.     Blendtec's uniform marketing of the Blenders is further designed to convince consumers, including Plaintiffs and Class Members, that the Blenders are high quality appliances that are safe, durable, reliable, and technologically advanced.

62.     Blendtec fails to disclose and otherwise conceals its knowledge of the Defect and associated safety hazard to consumers, including on its website, in its Owner's Manuals, warranty representations and other written materials, prior to or during the purchase of its Blenders and/or individual Jars, and during communications with consumers who make complaints to Blendtec regarding the Defect.

63.     Blendtec has also been aware of the Blade Assembly Defect for at least seven years, if not more, from various warranty claims made by consumers. Despite having knowledge of the allegations described herein, Blendtec has failed to notify consumers that the Jars are defective and inherently dangerous and has failed to issue a recall of the Blenders.

64.     In fact, when Blendtec does replace Jars, it replaces them with similarly defective Jars that will likewise fail.

65.     Blendtec expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Blenders are fit for the ordinary purpose for which they are sold: blending foods and liquids.

***Blendtec Warranty***

66.     Blendtec's current Warranty provides as follows:

> Blendtec, Inc. ("Blendtec") warrants to the original purchaser of a Blendtec product that such product intended for residential use will be free from defects in material and workmanship under such normal residential use from the date of purchase for the duration of the warranty period in effect for such product at the time of purchase [].

(the "Warranty")

67.     Blendtec has changed the terms of its Warranty multiple times in recent years, including in 2021 when it changed the durational limit of the Warranty from 8 years to 2 years for its Classic Series Blender. At that time, Blendtec also changed the durational limit of its Warranty for refurbished Blenders, decreasing it from 3 years to 1 year.

68.     The original Jars follow the Warranty terms for the Blender base; however, also hold a 3-year Warranty for those independently sold.

69.     Blendtec's Warranty durations vary based on the particular model of the Blender and/or Jar; however, other than the durational limitations, the Blendtec Warranty is the same in all other regards.

70.     Blendtec's manifest intent that its warranties apply to Plaintiffs and consumer Class Members as third-party beneficiaries is evident from the statements contained in its product literature, including its Warranty, which begins the date of the consumer's purchase and excludes commercial, non-residential use.

71.     Likewise, it was reasonably foreseeable that Plaintiffs and consumer Class Members would be the intended beneficiary of the products and warranties.[37]

72.     As described herein, Blendtec breached this warranty at the time Plaintiffs and Class Members purchased the Blenders because the Jars were defective when they came off the assembly line. Thus, at the time the Blenders were sold to consumers, Blendtec was already in violation of the express warranty.

---

[37] https://s3.amazonaws.com/blendtec.com/files/user_manuals/Total-Blender-Classic-Manual.pdf (Last Accessed August 3, 2022).

73.     The Defect renders the Blenders unfit for the ordinary purpose for which they are used, which is to blend food and beverages safely and efficiently.

74.     Any replacement warranty fails of its essential purpose because by replacing defective Jars with equally defective Jars, this remedy fails to put the goods in their warranted condition.

75.     Had Plaintiff, Class Members, and the consuming public known that the Jars were defective and would leak, smoke, vibrate, imbue food and beverages with rubber, silicone, and/or plastic debris, and otherwise fail prematurely, they would not have purchased the Blenders or Jars at all, or would not have paid the price they did.

## PLAINTIFFS' FACTS

### *Plaintiff Shelly Isaac's Experiences*

76.     On May 8, 2017, she purchased the Blendtec Classic 570 Blender with a WildSide+ Jar from Groupon. She paid $229.99, which Groupon represented as a discount from the Blender's retail value of $399.95.

77.     Plaintiff Isaac was aware of Blendtec's reputation as a high-quality blender and was impressed by its 8-year warranty.

78.     At all times since her purchase, Plaintiff Isaac used the Blender and Jar for her own residential use, using and cleaning them in accordance with all care and user instructions.

79.     Within the first year of owning the Blender, Plaintiff Isaac used it occasionally. However, even despite her infrequent use, the Blender began to make a loud grinding noise when used according to the manual's instructions.

80.     Plaintiff Isaac reached out to Blendtec by phone in summer of 2018, and Blendtec asked Plaintiff to run the Blender so that they could troubleshoot the issue by phone.

81.     After diagnosing the Blender as defective, Blendtec replaced Plaintiff Isaac's Blender with an upgraded, refurbished Classic 575 model with a WildSide+ Jar.

82.     Despite replacing both the base and the Jar, in 2020, less than two years later Plaintiff Isaac's Blender once again began to make a loud grinding noise during normal use.

83.     Due to this malfunction, Plaintiff Isaac was concerned that her Blender would fail entirely with continued use, and therefore has discontinued using her Blender.

84.     If Plaintiff Isaac had been aware that the Jar contained a Defect that would cause it to make a loud, grinding noise during use, she would not have purchased the Blender. Therefore, she did not receive the benefit of her bargain.

85.     Plaintiff Isaac would like to purchase Defendant's products in the future if they did not contain the Defect, and otherwise met the representations given by Defendant regarding their performance, quality, and durability of the Blenders. However, Plaintiff is unable to rely on Defendant's representations regarding its products in deciding whether to purchase Defendant's products in the future.

86.     As a result of Defendant's actions, Plaintiff Isaac has incurred damages, including economic damages.

***Plaintiff Alexander Zamudio's Experiences***

87.     In October of 2015, Plaintiff Zamudio purchased the Blendtec Classic 570 blender with a WildSide+ Jar from Costco. He paid approximately $284 for the Blender.

88.     Plaintiff Zamudio was aware of Blendtec's reputation as a high-quality blender, and was impressed by its 8-year warranty.

89.     At all times since his purchase, Plaintiff Zamudio used the Blender and Jar for her own residential use, using and cleaning them in accordance with all care and user instructions.

90.     However, within the first year of purchase, the Blender began to fail.

91.     After a period of normal use, the mixing blade became loose and began to rotate on the shaft. When operating the Blender, the blade would no longer turn but the shaft would turn, and ingredients in the Jar would leak down past the bearing housing and spray out.

92.     Plaintiff Zamudio reached out to Blendtec through their website in early 2022 to make a warranty claim.  After reviewing Plaintiff Zamudio's claim, Blendtec replaced his Jar with a new WildSide+ Jar.

93.     Despite replacing the Jar, Plaintiff Zamudio discontinued using his Blender given the risk of additional failure.

94.     If Plaintiff Zamudio had been aware that the Jar contained a Defect that would cause it to leak and otherwise fail to operate for its normal purpose of blending food, he would not have purchased the Blender or would not have paid the price he paid. Therefore, he did not receive the benefit of his bargain.

95.     Plaintiff Zamudio would like to purchase Defendant's products in the future if they did not contain the Defect, and otherwise met the representations given by Defendant regarding ther performance, quality, and durability of the Blenders. However, Plaintiff is unable to rely on Defendant's representations regarding its products in deciding whether to purchase Defendant's products in the future.

96.     As a result of Defendant's actions, Plaintiff Zamudio has incurred damages, including economic damages.

***Plaintiff Steve Oberly's Experiences***

97.      In the winter of 2015, he purchased the Blendtec Model ES3 blender with a WildSide+ Jar directly from Blendtec. He paid approximately $300 for the Blender.

98.     Plaintiff Oberly was aware of Blendtec's reputation as a high-quality blender, and was impressed by its 8-year warranty.

99.     At all times since his purchase, Plaintiff Oberly used the Blender and Jar for her own residential use, using and cleaning them in accordance with all care and user instructions.

100.    Within the first year of owning the Blender, Plaintiff Oberly regularly used the Blender according the instructions in the user manual. However, within the first year of purchase, the Blender began to fail. The mixing blade became loose and began to rotate on the shaft. When operating the Blender, the blade would continue to turn, but ingredients, along with a black residue at the base of jar, would leak down past the bearing housing and spray out.

101.    Plaintiff Oberly reached out to Blendtec through their website in October 2015 to make a warranty claim.

102.    After reviewing Plaintiff Oberly's claim, Blendtec replaced his Jar with a WildSide+ Jar in October 2015.

103.     Despite replacing the Jar, in late 2016, Plaintiff Oberly's Blender once again began to leak during normal use.

104.    If Plaintiff Oberly had been aware that the Jar contained a Defect that would cause it to leak and otherwise fail to operate for its normal purpose of blending food, he would not have purchased the Blender. Therefore, he did not receive the benefit of his bargain.

105.    Plaintiff Oberly would like to purchase Defendant's products in the future if they did not contain the Defect, and otherwise met the representations given by Defendant regarding ther performance, quality, and durability of the Blenders. However, Plaintiff is unable to rely on Defendant's representations regarding its products in deciding whether to purchase Defendant's products in the future.

106.    As a result of Defendant's actions, Plaintiff Oberly has incurred damages, including economic damages.

107.    On October 26, 2022, Plaintiff Isaac and other named individuals put Blendtec on notice of the Defect, and Plaintiff Isaac's intent to file class action lawsuits against Blendtec asserting both nationwide and state classes and alleging various causes of action, including breach of warranties, breach of contract, unjust enrichment, negligence, strict liability, and violations of various consumer protection statutes (including the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770 (a)(5) and (a)(7), and the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A § 1, *et seq.*).

108.    Although Blendtec responded to Plaintiff's notice, it failed and refused to provide an adequate remedy to Plaintiffs or putative Class Members.

## BLENDTEC'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

109.    Blendtec knew or should have known when it sold the Jars to the public that the Jars suffered from the Defect, and that the Defect caused the Jars to function improperly during their expected useful life, fail prematurely, render the entire Blender unusable, and potentially result in significant harm to consumers and the public.

110.    Blendtec's knowledge of these facts is established through consumer complaints, including several years of public Internet posts on consumer websites, complaining that the Jars failed during normal use. Further, Plaintiffs in this action put Blendtec on notice of the Defect as early as October 2015.

111.    Despite its knowledge, Blendtec did not remedy or eliminate the Defect in the Jars or remove them from the stream of commerce.

112.    As early as 2013, Blendtec was receiving complaints and warranty claims related to leaking from the Jar.[38]

113.    In March 2014, Blendtec announced a "dramatic improvement" to its Jars.[39] The new and improved Jar, called the WildSide+, was included in all new Blendtec residential blenders effective March 13, 2014. This change was made in anticipation of a patent issued to competitor Vita-Mix which became effective in June 2014. *See Vita-Mix Corporation v. Blendtec, Inc.*, Case No. 1:15 CV 1118, 2017 WL 3425286 (N.D. Ohio 2017).

114.    Based on information and belief, including patent no. US 10,493,412 B2 which was filed in 2015, the redesigned Jars introduced in 2014 include a double row bearing.

115.    At the time of its redesign, Blendtec was aware that the Jars were prone to leakage and failure. In fact, in 2015, in response to a customer complaint on its own website, Blendtec admitted that it was aware of a known "leaking issue [that] stems from the jar."[40]

★★★☆☆ **Grahamside** · 7 years ago
### Good, but leaked a little
Leaked a little when in operation. So exchanged for Designer 625. Both are very powerful and really do the job. Actually prefer the 575, it's perfect for my needs, but afraid if I had tried another it would leak as well

Quality of Product

Originally posted on Classic 575

Helpful?   Yes · 8    No · 2    Report

**Response from Blendtec:**
Marketing · 7 years ago
We're sorry you experienced some leaking with your first blender. Just so you know, the leaking issue stems from the jar and not the blender itself and you can get a new jar from us by calling 1-800-748-5400 since it's under warranty. Hopefully it doesn't happen again, but we wanted you to know just in case it does. Also, if you still have the option to exchange and would rather have the 575, you should!

---

[38] https://web.archive.org/web/20220318225242/https://www.chowhound.com/post/blendtec-blender-problem-903593 (Last Accessed August 4, 2022).
[39] http://cdn.blendtec.com/files/media/release-wildside-jar.pdf (Last Accessed August 4, 2022).
[40] https://www.blendtec.com/collections/classic-blenders/products/classic-575 (Last Accessed August 4, 2022).

116.     Any changes which were made to the Jars in 2014 either failed to cure the existing Defect or created a new defect manifesting in the same manner given that Blendtec continued to consistently received warranty claims related to leaking Jars, malfunctioning blades, smoking and excessive noise from 2015 to present—including from Jars which purportedly utilize the new design.

117.     Likewise, customers began complaining that although they took advantage of Blendtec's warranty process, the replacement Jars likewise failed in the same manner and/or the claim was denied based on the durational limit of the Warranty.

118.     Customer complaints are available on Blendtec's own website and date back at least 7 years. For example, consumers noted:

From Tyrese on Blendtec.com approximately 7 years ago (Blendtec Jars):[41]

> I have the same problem. It burns the rubber in the bottom and it started to leak... I just blended smoothly once or twice the max per week. It has such a poor quality... So disappointed.

From RebD on Blendtec.com approximately 7 years ago (Blendtec Jars):[42]

> Ive not quite has this a year and the black gasket to my wildside jar started shredding - we'd see little black shreds on the base when we removed the jar- now the gasket leaks any liquid we put in. Im really disappointed and hope I can have the jar replaced since we dont use it daily but its a great product and the jars are awfully expensive if the gasket is going to shred and wiggle the blade and leak. I thought my kids did it so blamed them, but in the Q&A section here, I see its not an isolated situation. I hope we can get this resolved so I can go back to loving my blender!

From Dan Jesolva on Blendtec.com approximately 6 years ago (Blendtec jars):[43]

---

[41] https://www.blendtec.com/products/wildside-jar (Last Accessed November 2021).
[42] *Id.*
[43] *Id.*

Great blender when pitchers are not broken. Had 2 pitchers replaced in less than a year. They are replaced warranty but still a hassle. May have bite the bullet and go back to vitamix

From Lisa Aloha from Blendtec.com approximately 5 years ago (Blendtec Jars): [44]

How can I get the jar without the rubber/plastic gasket? Amazon said an all metal and BPA jar it exists, however I can it? My rubber gasket shredded and literally smoked and burnt up on my 279th blend. I pre-turn. and do not overheat, I use enough liquid.

From Brad Q on Blendtec.com approximately 4 years ago (Blendtec Jars): [45]

I've had my Blendtec for about 7 years -- seven years of blissful smoothies. Hundreds of them. Maybe even thousands. It's been great. But the jars and specifically the blade assemblies, are a complete disappointment.

I'm on jar #2 now, and I'm starting to see the tell-tale signs that it's about to go belly up: black, nasty liquid beginning to leak out of the bottom (and maybe -- who knows? -- into my smoothie). This is exactly what the first jar began to do before it catastrophically failed discharging an odor of burnt rubber throughout the house.

In line with Blendtec's care instructions, I clean the jar with warm water and sometimes soap, if it really needs it, immediately after each use. I was hoping to extend the life of this 2nd jar by being even more careful with how I wash it and what I place into it (for example, never frozen fruit; always thawed in the microwave beforehand). Nonetheless, it seems this 2nd jar will not outlast the 1st.

Disappointing. And now I'm looking at spending another $100+ to replace it. If anyone from Blendtec reads this review, please tell me that improvements have been made to address this issue.

There aren't many weaknesses to your product. But if there is *one* thing you need to focus on, this is it.

From bird on Blendtec.com approximately 3 years ago (Blendtec Jars): [46]

I've had my Blendtec for 9 years now with no problems. I use it about 3 times a week primarily for juice and smoothies. Last time I used it, it began smoking and the rubber on

---

[44] *Id.*
[45] *Id.*
[46] *Id.*

the bottom of the jar was in shreds. Not sure if I can only replace the rubber piece or if I have to purchase a whole new jar. :(

From michelle1969 on Blendtec.com approximately 2 years ago (Blendtec Jars): [47]

I really wish I'd bought a Vitamix at this point. Our first Wildside jar broke while still under warranty and they replaced it. What happens is that the plastic bit holding the metal blade in place starts to deteriorate and gets into the food as well as all over the blender base. We were told we had to turn the blade manually to keep it from breaking. We did that for the second one and it broke about three months out of warranty. Piece of junk! It works great until it doesn't. It costs way too much to replace every two years!

From Kelpsa on Blendtec.com approximately a year ago (Blendtec Jars):[48]

How can yah complain about this blender ? I have had the same base for over five years and it works great still. However this is my third wild side jar replacement, of course I did what the company recommended , spin the blade prior to blending to lubricate the ball joint or whatever. I spin for 30 seconds. But after so long the rubber gasket on the bottom gets deteriorated and destroyed. Eventually your having a great day making a smoothie and then you smell burning rubber and broken pieces are all over in your smoothie and there yah go into the garbage w eth. Of course that's after a couple years with medium use. Much sooner if u use every day. Atlwast when I first purchased my blender this was replaced w warranty. But hoping soon this company finds a solution or atleast a discount for peeps who already own their products and need replacement. Other than that don't hesitate to buy best blender on th market

119.     Blendtec continues to receive complaints from customers on its website and other

third-party retailers' websites with complaints as recently as two and three months ago that

reference broken Jars.[4950]

120.     For example, just three months ago one user, Chevy, reported:

**Shredding black gasket/burning smell**

---

[47] *Id.*

[48] *Id.*

[49] https://www.blendtec.com/products/wildside-jar (Last Accessed August 3, 2022).

[50] https://www.blendtec.com/collections/classic-blenders/products/total-blender-classic (Last Accessed August 3, 2022).

Purchased this from Costco. Love it, however had issue with black gasket on bottom of jar shredding…now seems to have stripped the ridged screw that fastens to the blade. Super disappointed. Would not buy again. Smoothies are chalky, not like milkshakes.

121.    Furthermore, after it had already introduced its new Jars-- and while it continued to receive warranty claims related to its prior model Jars-- Blendtec shortened its warranty from 8 years to 2 years on its best-selling Classic Series Blenders. The company presumably did so to afford the warranty department increased warranty denial authority based on the durational limitations of the Warranty.

122.    Upon information and belief, Blendtec is currently still selling Blenders containing defective Jars, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Jars.

123.    Moreover, Blendtec continues to falsely represent through written warranties and manuals that the Blenders and their Jars are free from defects in materials and workmanship, are of merchantable quality, are "built to last," meet the "highest commercial standards," and will perform dependably for years.

124.    Blendtec does not disclose that the Jars suffer from the Defect that leads to leakage, smoking, vibration, grinding noises, and total product failure. As a result, reasonable consumers, including Plaintiffs and Class Members, purchased, and used, and continue to purchase and use the Blenders and their Jars in their homes, even though they will prematurely fail and cause damage to other property.

125.    Had Plaintiffs, Class Members, and the consuming public known that the Jars were defective, would prematurely fail and cause damage to their property, and they would not have purchased the Blendtec Products.

## UNCONSCIONABILITY AND FAILURE OF ESSENTIAL PURPOSE OF THE EXPRESS AND IMPLIED WARRANTIES

126.    The express and implied warranties relating to the Blendtec Blenders and Jars are

unconscionable as follows:

    a.   Defendant knew or should have known of the Defect in its Blenders prior to and at the time of sale of the Blenders to consumers, including from the hundreds or more consumer complaints directly reported to the Defendant;

    b.   Defendant was in a superior position to know of, remedy and disclose the Defect in its Blenders to Plaintiffs, who could not have known of the Defect at the time of purchase because they are not experts and had no way of identifying the Defect;

    c.   Plaintiffs and Class Members had no ability to negotiate the terms of the Warranty, including the durational time limitation or disclaimers contained therein;

    d.   Plaintiffs and Class Members had no meaningful choice in the terms of the Warranty, including the durational time limitation or disclaimer, including of consequential damages, contained therein;

    e.   Plaintiffs and Class Members had no meaningful choice in choosing another brand of blender, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations;

    f.   There was a substantial disparity between the Parties' bargaining power such that Plaintiffs were unable to derive a substantial benefit from the Warranty. A disparity existed because Defendant was aware that the Blenders were inherently defective, Plaintiffs and Class Members had no notice or ability to detect the Defect, Defendant knew Plaintiffs and Class Members had no notice or ability to detect the Defect, and Defendant knew that Plaintiffs and Class Members would bear the cost of correcting the Defect. This disparity was increased by Defendant's knowledge that failure to disclose the Defect would substantially limit the Blender's use and could cause it to fail altogether;

    g.   Defendant not only failed and refused to extend the time limitation of the Warranty to cover the Defect, but actually shortened the duration of the Warranty, despite knowing the products were defective at the time of purchase;

    h.   Plaintiffs and Class Members had no ability to discover the Defect at the time of sale;

    i.   The durational limit on the Warranty is grossly inadequate to protect Plaintiffs and Class Members from the Defect;

j.  Defendant sold the Blenders with knowledge of the Defect and of the fact that it may not manifest until after expiration of the duration of the Warranty;

k.  Defendant sold the Blenders with knowledge of the Defect and of the fact that the Blenders would fail well before the expiration of their useful lives;

l.  Defendant sold the Blenders knowing that they were not capable of being repaired or replaced with non-defective Products within the Warranty period, or thereafter;

m.  Plaintiffs and Class Members would have negotiated better terms in the purchase of their Blenders and Warranties had they been aware of the Defect; and

n.  The terms of the Warranty unreasonably favor Defendant over Plaintiffs and Class Members.

127.  Moreover, the failure of the Blade Assembly may not result in immediate smoking, vibrating, grinding, or leakage.  Therefore, the Jars may ultimately fail after the Warranty has expired or in a replacement Jar that also fails, resulting in Defendant's denial of the warranty claim despite the existence of the Defect within the warranty period.

128.  In addition, the warranty fails of its essential purpose in that the Defendant is unable to repair the Defect because it is only able to replace the broken Blendtec Jars with identical, equally defective Jars. To the extent that Blendtec offered to replace, or did replace, the defective Jars, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiffs and Class Members whole because the Warranty covering the Blendtec products gives Defendant the option to replace the Blendtec products with identical, equally defective Blendtec products. Accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in any written Warranties, and they seek all remedies that may be allowed.

## FED. R. CIV. P. 9(b) ALLEGATIONS
## (Affirmative and By Omission)

129.    Although Defendant is in the best position to know what content it placed on its website(s) and in marketing materials during the relevant timeframe, and the knowledge that it had regarding the Defect and its failure to disclose the Defect to consumers, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

130.    WHO: Defendant made material misrepresentations and/or omissions of fact through its website representations, Warranties, owner's manuals, labeling and marketing, statements and representations made by employees receiving Warranty claims, and through statements and representations made by its authorized retailers, which include statements such as that the Blenders were not defective, were of high quality, met the highest commercial standards, were suitable for their purpose of blending food, and would last as long, if not longer, than the average service life of any comparable blenders.

131.    WHAT: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Blenders are defective, are constructed with unsuitable incompatible materials, could break, smoke, and shed debris into food that is ingested by Plaintiffs and Class Members, were not of high quality, did not meet the highest commercial standards, could present a safety hazard when being used as intended, and could fail prior to the completion of their expected useful life. Defendant's employees and authorized agents and representatives made affirmative misrepresentations to Plaintiffs and Class Members regarding the same qualities. Further, Defendant's conduct deceived Plaintiffs and Class Members into believing that the Blenders are not defective, are high quality, are safe to use, and will last at least as long as the full duration of their expected useful life. Defendant knew or should have known this information is material to reasonable consumers, including Plaintiffs and Class Members in making their purchasing decisions, yet it omits any warning that the Blenders suffer from the Defect. No

reasonable consumer would expect the Jars to smoke, vibrate, leak, and shed rubber into the food when using their Blender in a reasonably foreseeable manner.

132.    WHEN: The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiffs and Class Members performed research on the Blender to gather information that would aid them in selecting the best blenders to purchase; prior to and at the time Plaintiffs and Class Members purchased the Blenders, prior to and at the time Plaintiffs and Class Members made claims after the Jars failed, and continuously throughout the applicable class periods.

133.    WHERE: Defendant's material misrepresentations and/or omissions were made on its website(s), through marketing materials, in warranties, in user manuals, on the labeling of the packaging, as well as through statements made by its employees and authorized retailers.

134.    HOW: Defendant made misrepresentations and/or failed to disclose material facts regarding the Defect and true safety risks of normal use of the Blender in written form, electronic form, or conventional hardcopy form, as well as verbally through statements made by its employees and authorized retailers.

135.    WHY: Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiffs, Class Members, and all reasonable consumers to purchase and/or pay for the Blenders, the effect of which was that Blendtec profited by selling the Blenders and/or individual Jars to many thousands of consumers.

136.    INJURY: Plaintiffs and Class Members purchased or paid more for the Blendtec Blender when they otherwise would not have absent Defendant's misrepresentations and/or omissions. Further, the Blenders continue to pose unreasonable safety risks and cause consumers

to incur unnecessary and unreasonable out-of-pocket expenses when manifestation of the Defect occurs.

## CLASS ACTION ALLEGATION

137.    Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23, on behalf of the below-defined Classes:

> **Nationwide Class**:
> During the fullest period allowed by law, all persons residing in the United States who purchased the Blendtec Blenders.
>
> **California Class**:
> During the fullest period allowed by law, all persons residing in the State of California who purchased the Blendtec Blenders.
>
> **Massachusetts Class**:
> During the fullest period allowed by law, all persons residing in the state of Massachusetts who purchased the Blendtec Blenders.
>
> **Washington Class**:
> During the fullest period allowed by law, all persons residing in the State of Missouri who purchased the Blendtec Blenders.

138.    Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

139.    Plaintiffs reserve the right to amend or modify the Class definition after she has had an opportunity to conduct discovery.

140.    **Numerosity**:  Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not

been determined at this time, Plaintiffs are informed and believes that thousands of consumers have purchased the Blenders.

141.   **Commonality**: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

> a.   whether the Blenders are defectively designed or manufactured;
>
> b.   whether the fact that the Blenders suffer from the Defect would be considered material to a reasonable consumer;
>
> c.   whether, as a result of Blendtec's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing the Blenders;
>
> d.   whether Blendtec was aware of the Defect;
>
> e.   whether the Defect is a safety hazard;
>
> f.   whether Blendtec breached express warranties with respect to the Blenders;
>
> g.   whether Blendtec has a duty to disclose the defective nature of the Blenders to Plaintiffs and Class Members;
>
> h.   whether Blendtec violated various consumer protection statutes;
>
> i.   whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and
>
> j.   in other ways to be supplemented as a result of discovery.

142.   **Adequate Representation**: Plaintiffs will fairly and adequately protect the interests of Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

143.   **Predominance and Superiority**: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Blendtec's unlawful and wrongful

conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Blendtec's misconduct.  Absent a class action, Class Members will continue to incur damages, and Blendtec's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

144.    Plaintiffs know if no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

145.    Defendant acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes appropriate.

## FIRST CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
#### (Plaintiffs Individually and on Behalf of the Classes)

146.    Plaintiffs hereby adopt and incorporate by reference, all foregoing allegations as though fully set forth herein.

147.    In connection with its sale of its Blenders, Blendtec expressly warranted that they were free from defect at the time of purchase, free from leakage, and suitable for reliable blending.

148.    The defectively designed Jars are subject to and otherwise covered by Blendtec's Warranty.

149.    Each of the Jars has an identical or substantially identical warranty, with the exception of the durational limitations.

150.     Blendtec was obligated, under the terms of the express warranty to adequately repair or replace the defective Jars for Plaintiffs and Class Members.

151.     Privity is not required because Plaintiffs and each of the members of the Class are the intended beneficiaries of Blendtec's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Blenders and have no rights under the warranty agreements provided by Blendtec. Blendtec's warranties were designed for and intended to benefit the consumer only and Plaintiffs and Class Members were the intended beneficiaries of the Blenders.

152.     More specifically, Blendtec's manifest intent that its warranties apply to Plaintiffs and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically states the Blenders are to be used for non-commercial, household use. Likewise, it was reasonably foreseeable that Plaintiffs and consumer Class Members would be the intended beneficiary of the products and warranties.

153.     In its Warranty, Blendtec warrants that the Blenders would be free of defects in materials and workmanship for up to 10-years from the date of purchase, or 3-years for independent purchases of Jars.

154.     Blendtec's warranty representations are made online, on its packaging, through its various manuals, and its Warranty.

155.     Blendtec breached the warranty because it improperly and unlawfully denies valid warranty claims, and it has failed or refused to adequately repair or replace the Blenders with non-defective units or parts. Plaintiffs and the Class Members have privity of contract with Blendtec through their purchase of the Blenders, and through the express written and implied warranties

that Blendtec issued to its customers. Blendtec's warranties accompanied the Blenders and were intended to benefit end-users of the Blenders.

156.    To the extent Class Members purchased the Jars from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Blendtec and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are Intended to benefit the ultimate consumer or user of the Blenders.

157.    The express written warranties covering the Jars were a material part of the bargain between Blendtec and consumers. At the time it made these express warranties, Blendtec knew of the purpose for which Blenders were to be used.

158.    Blendtec breached its express warranties by selling Jars that were, in actuality, not free of defects, would inevitably fail prematurely, were not made from merchantable material and workmanship, and could not be used for the ordinary purpose of reliably blending food and beverages.  Blendtec breached its express written warranties to Plaintiffs and Class Members in that the Blenders are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a risk of damage to Plaintiffs and Class Members.

159.    The Jars that the Plaintiffs and Class Members purchased contained a Defect that caused each of them damages including silicone materials leaking into food, loss of the product, and loss of the benefit of their bargain.

160.    Moreover, Blendtec was put on constructive notice about its breach through its review of consumer complaints dating back at least seven years ago, as well as through appliance sale entities, and, upon information and belief, through product testing.

161.    Specifically, on October 26, 2022, Plaintiff Isaac and other Class Members put Blendtec on notice that Blendtek had breached its warranties to Plaintiff and intended to pursue a class action related to those breaches, as well as other causes of action.

162.    Although Blendtek responded to Plaintiff's notice, it did not take corrective action to remedy its breaches of warranties.

163.    Despite having notice and knowledge of the defective nature of the Blenders, Blendtec failed to provide any relief to Class Members with Blenders, failed to provide a non-defective replacement Blender and/or Jar to Plaintiffs and Class Members, and otherwise failed to offer any appropriate repair or compensation from the resulting damages.

164.    Blendtec breached its express warranty to adequately repair or replace the Blenders and/or Jars despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Blenders.

165.    To the extent that Blendtec offered to replace the defective Jars, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiffs and Class Members whole because the warranty covering the Blenders gives Blendtec the option to repair or replace the Jar, where neither is sufficient. Specifically, in its course of business, Blendtec often has opted to provide a replacement Jars to complaining consumers; however, the replacement Jar likewise contains the Defect, resulting in the same or similar damages.

166.    Further, where Blendtec has sold or otherwise provided replacement Jars, those products are likewise defective and have failed or will fail in the same manner.

167.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

168.     Had Plaintiff, Class Members, and the consuming public known that the Blenders were defective, would cause damage, or that Blendtec would not properly honor its warranty, they would not have purchased the Jars or would have paid less for them.

169.     To the extent any express warranties do not by their terms cover the Defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiffs and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

170.     Plaintiffs and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of Blendtec or by operation of law considering Blendtec's conduct described throughout this Complaint.

171.     Blendtec has received timely notice regarding the problems at issue in this litigation, and notwithstanding, Blendtec has failed and refused to offer an effective remedy.

172.     As a direct and proximate result of Blendtec's breach of its express written warranties, Plaintiffs and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to the purchase price of the Blender, cost of repair or replacement, overpayment for the Blender, and diminution in value.  Plaintiffs and Class members suffered damages at the point of sale stemming from their overpayment for the defective Blenders and loss of the product and its intended benefits.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Plaintiffs Individually and on Behalf of the Class)**

173.     Plaintiffs hereby adopt and incorporate by reference, all foregoing allegations as though fully set forth herein.

174.    Blendtec is a merchant and was at all relevant times involved in the manufacturing, and is the distributor, warrantor, and/or seller of the Blenders. Blendtec knew or had reason to know of the specific use for which the Blenders, as goods, were purchased.

175.    Blendtec entered into agreements with retailers, suppliers, and/or contractors to sell its Blenders to be purchased by Plaintiffs and Class Members.

176.    Blendtec provided Plaintiffs and Class Members with implied warranties that the Blenders were merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers and their property.

177.    However, the Jars, and therefore also the Blenders, are not fit for their ordinary purpose of providing a reasonably reliable method of blending food and beverages because, inter alia, the Jars contain a Defect preventing the Jars from reliably blending and causing leakage outside of the unit and contaminating food and beverages.  As the failure of the Jars render the Blendar base unusable, the Blenders are also not fit for their ordinary purpose of blending food and beverages. Therefore, the Jars and the Blenders are not fit for their particular purpose of reliably blending.

178.    Plaintiffs and Class Members have had sufficient direct dealings with either Blendtec or one of its agents to establish privity of contract between Blendtec, on the one hand, and Plaintiffs and each Class Member, on the other hand.

179.    Privity is not required because Plaintiffs and each of the Class Members are the intended beneficiaries of Blendtec's warranties and its sale through retailers.  The retailers were not intended to be the ultimate consumers of the Blenders and have no rights under the warranties provided by Blendtec. Blendtec's warranties were designed for and intended to benefit the consumer only and Plaintiffs and Class Members were the intended beneficiaries of the Blenders.

180.     More specifically, Blendtec's manifest intent that its warranties apply to Plaintiffs and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically states the Blenders are to be used for household, non-commercial use.  Likewise, it was reasonably foreseeable that Plaintiffs and consumer Class Members would be the intended beneficiary of the products and warranties.

181.     Blendtec impliedly warranted that the Jars were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Blenders manufactured, supplied, distributed, and/or sold by Blendtec were safe and reliable for blending food and/or liquids; and (ii) a warranty that the Blenders would be fit for their intended use while the Blenders were being operated.

182.     Contrary to the applicable implied warranties, the Blenders, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable and durable methods of blending food and/or liquids.  Instead, the Blenders suffer from a defective design and/or manufacture, as alleged herein.

183.     Blendtec's failure to adequately repair or replace the defective Blenders has caused the warranty to fail of its essential purpose.

184.     Blendtec breached the implied warranties because the Blenders were sold with the Defect, which substantially reduced and/or prevented the Blenders from being used for safe food preparation.

185.     Plaintiffs provided Blendtec notice of its breach on October 26, 2021, prior to the filing of this Complaint; however, Blentec failed to remedy its breaches of implied warranties.

186.     Moreover, Blendtec was put on constructive notice about its breach through its review of consumer complaints and other reports described herein, and, upon information and belief, through product testing.

187.     Had Plaintiff, Class Members, and the consuming public known that the Blenders were defective or would cause damage, they would not have purchased the Blenders or would have paid less for them.

188.     As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### THIRD CLAIM FOR RELIEF
#### (IN THE ALTERNATIVE)
**Breach of Contract**
**(Plaintiffs Individually and on Behalf of the Class)**

189.     Plaintiffs hereby adopt and incorporate by reference, all foregoing allegations as though fully set forth herein.

190.     Plaintiffs and Class Members purchased the Blenders from Blendtec or through authorized retailers and other appliance stores.

191.     Blendtec expressly warranted that the Blenders were fit for their intended purpose and that they were free of defect and suitable for blending food and/or liquids.

192.     Blendtec made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Blendtec.

193.     Defendant breached the warranties and/or contract obligations by placing the defective Blenders into the stream of commerce and selling them to consumers, when it knew the Blenders contained the Defect, were prone to premature failure, would not reliably blend food and

beverages, and would cause contamination to food and beverages. These deficiencies substantially and/or completely impair the use and value of the Blenders.

194.    The deficiencies described existed when the Blenders left Blendtec's possession or control and were sold to Plaintiffs and Class Members.  The deficiencies and impairment of the use and value of the Blenders were not discoverable by Plaintiffs or Class Members at the time of the purchase of the Blenders.

195.    Had Plaintiff, Class Members, and the consuming public known that the Blenders were defective or would cause damage, they would not have purchased the Blenders or would have paid less for them.

196.    As a direct and proximate cause of Blendtec's breach of contract, Plaintiffs and Class Members were harmed because they would not have purchased the Blenders if they knew the truth about the defective condition of the Blenders.

**FOURTH CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment**
**(Plaintiffs Individually and on Behalf of the Class)**

197.    Plaintiffs hereby adopt and incorporate by reference, all foregoing allegations as though fully set forth herein.

198.    This alternative claim is asserted on behalf of Plaintiffs and Class Members to the extent there is any determination that any contracts between Class Members and Blendtec do not govern the subject matter of the disputes with Blendtec, or that Plaintiffs do not have standing to assert any contractual claims against Blendtec.

199.    Plaintiffs and Class Members conferred a monetary benefit on Blendtec, and Blendtec had knowledge of this benefit. The average price paid by Plaintiffs and Class Members for the Blenders was more than $300, and the Jars more than $100.

200.    By its wrongful acts and omissions described herein, including selling the defective Blenders, Blendtec was unjustly enriched at the expense of Plaintiffs and Class Members.

201.    Plaintiff' and Class Members' detriment and Blendtec's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

202.    It would be inequitable for Blendtec to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Blenders.

203.    Plaintiffs and Class Members seek restitution from Blendtec and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Blendtec from its wrongful conduct and establishing a constructive trust from which Plaintiffs and Class Members may seek restitution.

## FIFTH CLAIM FOR RELEIF
### NEGLIGENCE
**(Plaintiffs Individually and on Behalf of the Class)**

204.    Plaintiffs hereby adopt and incorporate by reference, all foregoing allegations as though fully set forth herein.

205.    Blendtec has a duty to exercise reasonable care in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Blenders that Blendtec places into the stream of commerce, including a duty to assure that the product will perform as intended and will not cause damage as described herein.

206.    Blendtec breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Blenders and Jars that Blendtec placed into the stream of commerce in that Blendtec knew or should have known that the products contained a safety Defect, did not function as intended, and/or created a high risk of unreasonable, dangerous, foreseeable consequences.

42

207.    The negligence of Blendtec, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

a.  designing, selecting materials, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Blenders without thoroughly testing them;

b.  negligently failing to adequately and correctly warn Plaintiff, Class Members, and the public, of the risks, potential damage, and dangers of premature failure of Blendtec's Blenders;

c.  negligently failing to recall or otherwise notify users at the earliest date that it became known that the Blenders were, in fact, defective and would prematurely fail;

d.  negligently advertising and recommending the use of the Blenders without sufficient knowledge as to its manufacturing defect and premature failure;

e.  negligently representing that Blendtec's Blenders were suitable for its intended purpose when, in fact, the Defect will render the Blender unable to properly blend food and beverages and otherwise lead to contamination of food and beverages;

f.  negligently designing and processing the Blenders in a manner that would prematurely fail; and

g.  in other such ways that may be proven at trial.

208.    Blendtec was negligent in the design, material selection, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Blendtec's Jars in that they:

a.  failed to use due care in designing, selecting materials, and manufacturing the Blenders so as to avoid the premature failure when the Blenders was used for its intended purpose;

b.  failing to adequately perform testing related to the compatibility of the seals and ball bearings to the Jars;

c.  failing to adequately perform testing related to adequacy of the seals and the ball bearings;

d.  failing to conduct adequate testing to determine the useful life of the Blenders;

e. failing to warn Plaintiff, prior to actively encouraging the purchase of the Blenders either directly or indirectly, orally or in writing, about the defective nature of the product; and

f. in other such ways that may be proven at trial.

209. Upon information and belief, despite the fact that Blendtec knew or should have known that the Jars were defective and would prematurely fail, Blendtec continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Blenders to Plaintiff, Class Members, and/or the consuming public.

210. Blendtec knew or should have known that consumers such as Plaintiffs and Class Members would foreseeably suffer damage to the Blenders and Plaintiffs and Class Members' property as a result of Blendtec's acts and omissions, as well as failure to exercise ordinary care, as well as Blendtec's negligent design and manufacture of the Blenders, as set forth herein.

211. Blendtec's negligence was the proximate cause of Plaintiff's and Class Members' damages to the product, contamination of food and beverages, as well as economic loss, which they suffered.

212. By reason of the foregoing, Plaintiffs and Class Members experienced and/or are at risk of premature failure of the Blenders.

213. Had Plaintiff, Class Members, and the consuming public known that the Blenders were defective or would cause damage, they would not have purchased the Blenders or would have paid less for them.

214. As a direct and proximate result of Defendant's misconduct, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

215. Plaintiffs bring this count on behalf of themselves and the Class Members and repeat and re-allege all previous paragraphs, as if fully included herein.

## SEVENTH CLAIM FOR RELIEF
### Violation of Massachusetts Consumer Protection Law
### Mass. Gen. Laws c. 106, § 2-314
### (Plaintiff Isaac Individually and on Behalf of the Massachusetts Class)

216.    Plaintiff Isaac brings this count on behalf of herself and the Class Members and repeats and re-alleges all previous paragraphs, as if fully included herein.

217.    Blendtec's practices as alleged in this Complaint constitute a breach of the implied warranty of merchantability, pursuant to Mass. Gen. Laws Ch. 106, § 2-314.

218.    The implied warranty of merchantability requires, among other things, that the Blendtec Products pass without objection in the trade and be fit for the ordinary purposes for which the Blenders are used.

219.    The Blendtec Blenders are "goods" within the meaning of Mass. Gen. Laws Ch. 106, § 2-105.

220.    Defendant is a "merchant" within the meaning of Mass. Gen. Laws Ch. 106, § 2-104.

221.    At all times relevant hereto, the Blenders were defective because the Blade Assembly Defect causes the Jar's seal to degrade, ball bearings to fail, leak, and ultimately fail for its ordinary purpose of blending food and beverages.

222.    As a result of the defect described herein, the Jars, and therefore the Blenders, were not merchantable at the time of sale, and do not function in their ordinary capacity.

223.    The remedies provided by Blendtec failed of their essential purpose because Blendtec replaced Plaintiff and Class members' defective Jars with other defective Jars.

224.    Plaintiff provided notice of the Defect and her claims on October 26, 2021.

225.    Any purported disclaimer or limitation of the implied warranty of merchantability on the part of Blendtec is unconscionable and unenforceable because Blendtec possessed actual, exclusive knowledge of the Defect in the Jars at all relevant times as alleged herein.

226.    Based on the foregoing, Blendtec's conduct entitles Plaintiff and Class members to all remedies available under Mass. Gen. Laws Ch. 106, §§ 2-714 and 2-715 in amounts to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**Violation of Massachusetts Consumer Protection Law**
**Mass. Gen. Laws c. 93A, §§2 et seq.**
**(Plaintiff Isaac Individually and on Behalf of the Massachusetts Class)**

227.    Plaintiff Isaac brings this count on behalf of herself and the Class Members and repeats and re-alleges all previous paragraphs, as if fully included herein.

228.    M.G.L. c. 93A, § 9 provides that "[a]ny person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action in the superior court . . . for damages and such equitable relief . . . ." Section 2 declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . "

229.    During the relevant period, Defendant was engaged in trade or commerce within the Commonwealth of Massachusetts.

230.    As described herein, Defendant engaged in unfair and deceptive business acts and/or practices in violation of M.G.L. c. 93A, §§ 2 and 9 by failing to disclose the existence of the Blade Assembly Defect.

231.    Additionally, Defendant engage in unfair and deceptive business acts and/or practices in violation of M.G.L. c. 93A, §§ 2 and 9 by breaching the implied warranty of merchantability under to M.G.L. c. 106, § 2-314. See, e.g., 940 Code Mass. Regs. § 3.16(2); 940 Code Mass. Regs. § 3.08(2).

232.    Defendant's violation of the Massachusetts Attorney General regulations enumerated above also violates M.G.L. c. 93A § 2(a) because regulations promulgated by the Massachusetts Attorney General under c. 93A § 2(c) provide that any act or practice violates Chapter 93A, § 2 if "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection..." 940 Code Mass. Regs. § 3.16(3).

233.    Defendant's violations of c.93A were committed willfully, knowingly and in bad faith.

234.    Plaintiff and the Class have sustained actual damages as a result of Defendant's violations of M.G.L. c. 93A.

235.    Plaintiff made a demand for relief, in writing on behalf of herself and the putative Class, to Blendtec more than thirty (30) days prior to filing this amended complaint, as required by M.G.L. c. 93A, § 9.

236.    As of the date of this Complaint, Defendant has not made a reasonable offer of relief to Plaintiff and the Class. In response to Plaintiff's demand letter, Defendant has not offered sufficient relief to Plaintiff or the putative Class. Defendant's refusal to grant the relief requested by Plaintiff, on behalf of herself and the Class, was made in bad faith with knowledge or reason to know that its acts violated M.G.L. c. 93A § 2(a).

237.    As a result of Defendant's violations of M.G.L. c. 93A §§ 2(a), 9, Defendant is liable to Plaintiff and the Class for up to three times the damages that Plaintiff and the Class incurred, or at the very least refunds or the statutory minimum award of $25, together with all related court costs and attorneys' fees.

<u>**EIGHTH CAUSE OF ACTION**</u>
**California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, et seq.**
**(Plaintiff Zamudio Individually and on behalf of the California Class)**

238.    Plaintiff Zamudio incorporates by reference and re-allege the preceding paragraphs as if fully set forth herein.

239.    Defendant's conduct constitutes violations under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to an consumer."

240.    Defendant's conduct falls within the meaning of this statute because they caused transactions to occur resulting in the sale or lease of goods or services to consumers-- namely, the sale of Blender to Plaintiff Zamudio.

241.    Blendtec Blenders and Jars are considered goods within the meaning of the statute under Civil Code § 1761(a) and Defendant's sale of the Blenders and Jars is considered a service under Civil Code § 1761(b).

242.    Plaintiff Zamudio is a consumer pursuant to the CLRA.

243.    Defendant violated the CLRA by way of the following provisions:

    a.    In violation of Civil Code § 1770(a)(5), Defendant represents (and continue to represent) that their goods have characteristics which they do not have-- that, in exchange for each payment, Plaintiff Zamudio received a blender which is functioning as intended and which meets average life expectancy;

48

b. In violation of Civil Code § 1770(a)(14), Defendant represents (and continue to represent) that a transaction has rights, remedies and/or obligations which they did not have-- that Plaintiff Zamudio received a blender which is functioning as intended and which meets active life expectancy, and that Defendant is capable of correcting defects when it is not.

244. Defendant also engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code § 1770(a)(5) and (a)(7) when it represented though its advertising, warranties, and other express representations that the Blenders have benefits or characteristics that it did not actually have, and that the warranty was capable of being honored when it was not.

245. More specifically, Defendant misrepresented the Blenders and Jars as follows:

a. The Blenders and Jars are suitable for blending food and beverages.

b. "Blendtec warrants the blender motor to be free of defect in material and workmanship for the warranty period."[51]

c. "Blendtec warrants the motor base and jar assembly, including all moving jar parts, against leaking or breakage for the warranty period."[52]

d. The Blenders "are built to the highest commercial standards,"[53]

e. The Blenders are "the most advanced blenders you can buy."[54]

f. "The World's Most Advanced Blender."[55]

---

[51] https://s3.amazonaws.com/blendtec/files/user_manuals/2016-Classic-Series-Manual.pdf (Last Accessed August 3, 2022).
[52] *Id.*
[53] https://www.blendtec.com/pages/blendtec-difference?_pos=1&_sid=cecde2b29&_ss=r (Last Accessed August 3, 2022).
[54] *Id.*
[55] https://www.blendtec.com/pages/about (Last Accessed August 3, 2022).

g.  The drive socket "never slips or needs to be replaced, so it stands up to heavy use year after year";[56]

h.  The Blenders contain "Durable Safety Blade"[57]

i.  The Blenders are "Stronger. Safer."[58]

j.  "Gives you a perfectly smooth blend every time."[59]

k.  "Blendtec blades are made of cold-forged hardened steel and are up to 80% thicker and 10 times stronger than other blender blades."[60]

l.  "No more baby-sitting your blender- create the perfect blends every time with a single touch."[61]

m.  "Instead of relying on breakable plastic parts to spin our blades, all Blendtec blenders feature a hardened metal drive socket."[62]

n.  "Up for any task."[63]

o.  "Blendtec blenders feature the industry's most powerful motors..."[64]

p.  "An Unfaltering Dedication to Innovation."[65]

q.  "Powerfully Innovative."[66]

---

[56] https://www.blendtec.com/pages/what-makes-blendtec-the-best (Last Accessed August 3, 2022).
[57] *Id*.
[58] *Id*.
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id*.
[64] *Id*.
[65] https://www.blendtec.com/pages/about (Last Accessed August 3, 2022).
[66] *Id.*

r.   "With technology to make blending simpler and more effective, Blendtec is the ultimate tool for helping you Feed Your Passion.™"[67]; and

s.   the WildSide+ Jar specifically combines with the Blendtec Blender to "maximize the blender performance" which produces "the fastest, smoothest blends yet."[68]

246.   Defendant is aware that their representations are false and misleading-- specifically, the Defendant continued to sell defective Blenders into the stream of commerce even after they had knowledge of said Defect and Defendant's inability to repair the Defect.

247.   Plaintiff Zamudio has suffered injury-in-fact and actual damages resulting from Defendant's omissions and misrepresentations because Defendant knew that the Jars contained a Defect and that the Defect could not be corrected as represented in the Warranty. Additionally, Defendant withheld this information in order to ensure that it could automatically and routinely deny warranty claims where the latent Defect manifested after expiration of the applicable Warranty.

248.   On October 26, 2021, prior to the filing of this Complaint, Defendant was put on written notice of consumers' claims arising from violations of numerous provisions of California law, including the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, et seq., as well as other causes of action.

249.   Plaintiff Zamudio's injuries were proximately caused by Defendant's fraudulent business practices.

---

[67] *Id.*
[68] https://www.blendtec.com/products/wildside-jar (Last Accessed August 3, 2022).

250.    Therefore, Plaintiff Zamudio is entitled to relief under the CLRA.

## NINTH CAUSE OF ACTION
### California's Unfair Competition Law ("UCL")
### Violations of Cal. Bus. & Prof. Code § 17200, et seq.
### (Plaintiff Zamudio Individually and on Behalf of the California Class)

251.    Plaintiff Zamudio hereby adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

252.    Defendant engaged in unlawful, fraudulent, and unfair business practices.

253.    Defendant's conduct was unlawful because it violates the CLRA, tort law, and contract law.

254.    Defendant's conduct is fraudulent because they continued to represent that their goods were fit for their intended use when they knew that the Jars were defective in an attempt to get consumers to continue to buy said Blenders; and, Defendant's conduct is fraudulent because they did not disclose to owners of said Blenders of the existence of the Defect and continue to conceal its existence in an attempt to keep consumers from seeking refunds or costs of repair and to force the Blenders' written warranties to expire, so they would not bear the costs of the Defect and any damage it may have caused.

255.    Defendant's conduct constitutes an unfair business practice-- under the UCL, a business practice is considered to be "unfair" if the conduct alleged is immoral, unethical, oppressive, or substantially injurious to consumers; as well as if the conduct causing alleged injury which is not outweighed by benefits to other consumers or to competition, and that the injury is of a type which the consumer could not have avoided.

256.    Defendant's behavior is immoral, unethical, oppressive and injurious to consumers because they are profiting from concealing the Defect in the Blenders, which are still being sold

to this day, as well as denying warranty claims in an attempt to avoid responsibility for the cost of repair or replacement.

257.    Defendant's behavior is immoral, unethical, oppressive and injurious to consumers because they are profiting from a Warranty that is a sham given Defendant is unable to comply with the terms related to correction of the defects.

258.    Defendant's retention of profits from the aforementioned conduct does not outweigh the economic harm that said retention imposes on consumers. The lone party that benefits is the Defendant-- their conduct also harms competition, who would otherwise be the recipient of the business that Defendant acquired using omissions and misrepresentations.

259.    Plaintiff Zamudio had no way of knowing that Defendant was selling defective products and had no ability or intention of repairing or replacing them.

260.    Therefore, Plaintiff Zamudio entitled to relief under the UCL.

**TENTH CAUSE OF ACTION**
**Washington Consumer Protection Act**
**Wash. Rev. Code Ann. §§ 19.86.020, et seq.**
**(Plaintiff Oberly Individually and on Behalf of the Washington Class)**

261.    Plaintiff Oberly, individually, and on behalf of all others similarly situated, adopt and incorporate by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

262.    This cause of action is brought pursuant to the Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.010 et seq. (the "WCPA"). The stated purpose of the WPCA is "to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." Wash. Rev. Code Ann. § 19.86.920.

263.   Wash. Rev. Code Ann. § 19.86.020 declares unlawful "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ..."

264.   Plaintiff Oberly and all Class Members of the Washington Class are "persons" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by Wash. Rev. Code Ann. § 19.86.010.

265.   Defendant violated WCPA by engaging in the unfair and deceptive actions and/or omissions as described herein by engaging in unfair or deceptive acts or practices that occurred in trade or commerce, had an impact on public interest, and caused injury to property.

266.   In violation of WCPA, Defendant employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts in their sale and advertisement of the Blenders in the State of Washington.

267.   Defendant engaged in the concealment, suppression, or omission in violation of the WCPA when, in selling and advertising the Blenders, they (1) represented that the Blenders were free of defects and would reliably blend food and beverages when it lacked credible evidence to support those claims, and, at worse, knew the Blenders were, in fact, defective in that it had a propensity to degrade and leak, was not suitable to be used for its intended purpose, and otherwise was not as warranted and represented by Defendant; (2) failed to disclose to, or concealed from, consumers material facts about the defective nature of the Blenders; and (3) failed to disclose its own knowledge of the defective nature of the Blenders when Defendant knew that there were defects in the Blenders which would result in damage and harm.

268.   Defendant engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiff, Class Members of the

Washington Class, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase the Blenders with said design defect.

269.    The concealment, suppression, or omission of the aforementioned material facts had the capacity to and did so deceive a substantial portion of the public including the members of the class into believing the Blenders were free of defects.

270.    Plaintiff and Class Members of the Washington Class would not have purchased the Blenders had they known or become informed of the material defects.

271.    Defendant's concealment, suppression, or omission of material facts as alleged herein constitutes unfair, deceptive and fraudulent business practices within the meaning of the WCPA.

272.    Defendant has acted unfairly and deceptively by misrepresenting the quality, safety and reliability of the Blenders.

273.    Defendant either knew, or should have known, that the Blenders were defectively designed and that the Defect would cause the Jar's seal to degrade, leak, and ultimately fail for its ordinary purpose of blending food and beverages.

274.    Upon information and belief, Defendant knew that, at the time the Blenders left Defendants' control the Blenders contain the defect described herein. At the time of sale, the Blenders contained design and construction defects. The defects reduced the effectiveness and performance of the Blenders and rendered it unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

275.    As a direct and proximate cause of the violation of WCPA, described above, Plaintiff and members of the Washington Class have been injured in that they have purchased the Blenders with the defective Blade Assembly based on nondisclosure of material facts alleged

above. Had Plaintiff and Class Members of the Washington Class known the defective nature of the Blade Assembly, they would not have purchased Blenders.

276.     Defendant used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses. This unlawful conduct is continuing, with no indication that Defendant will cease.

277.     Defendant's actions in connection with the manufacturing and distributing of the Blenders as set forth herein evidences a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the WCPA, Wash. Rev. Code Ann. § 19.86.010 et seq.

278.     Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

279.     Said acts and practices on the part of Defendant were and are illegal and unlawful pursuant to Wash. Rev. Code Ann. § 19.86.020.

280.     As a direct and proximate result of Defendant's violations of Wash. Rev. Code Ann. § 19.86.010 et seq., Plaintiff has suffered damages. Plaintiff is entitled to actual damages, including but not limited to the difference in value between the Blender as it was originally delivered and as it should have been delivered, equitable and declaratory relief, punitive damages, treble damages, costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that this Court:

A. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs

and the Classes in an amount to be determined at trial;

C.  Grant restitution to Plaintiffs and the Classes and require Blendtec to disgorge its ill-gotten gains;

D.  Permanently enjoin Blendtec from engaging in the wrongful and unlawful conduct alleged herein;

E.  Award Plaintiffs and the Class Members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F.  Award Plaintiffs and the Class Members pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.  Award such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED: August 4, 202                                Respectfully submitted,


                                                    /s/ Alex R. Straus
                                                    Alex R. Straus (Bar No. 677434)
                                                    MILBERG COLEMAN BRYSON
                                                    PHILLIPS GROSSMAN PLLC
                                                    280 South Beverly Drive, Penthouse
                                                    Los Angeles, California 90212
                                                    Telephone: 914.471.1894
                                                    Facsimile: 919.600.5035
                                                    astraus@milberg.com

                                                    Harper T. Segui*
                                                    MILBERG COLEMAN BRYSON
                                                    PHILLIPS GROSSMAN PLLC
                                                    825 Lowcountry Blvd Suite 101
                                                    Mount Pleasant, SC 29464
                                                    Telephone: 843.513.6452
                                                    Facsimile: 919.600.5035
                                                    hsegui@milberg.com

Erin J. Ruben*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: 919.600.5000
eruben@milberg.com

Rachel Soffin*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rsoffin@milberg.com

*Application to be admitted pro hac vice is forthcoming*

*Attorneys for Plaintiffs and the Putative Class*